### IN THE

# HIGH COURT OF ERRORS AND APPEALS

### FOR THE

# STATE OF MISSISSIPPI.

---

## JANUARY TERM, 1851.

JACOB PORTEVANT *vs.* Z. E. PENDLETON'S ADMINISTRATORS.

By the common law, all personal actions abated by the death of either party before judgment, and the difficulties and delay produced by the operation of the rule, were remedied by the statute of 17 Charles 2, and 8 & 9 William 3, which gave the *scire facias* to bring in the representatives of the party deceased; but these statutes go no further than to authorize the bringing in the immediate representatives of the party to the suit.

The statute of our State has remedied the evils of the common law rule, by declaring that actions commenced by or against a testator or intestate, shall survive for or against the executor or administrator, with the effect they might have been prosecuted by or against the testator or intestate; and by another statute it is also declared, that pending actions shall survive, and the *scire facias* is given to bring in the representatives, and the same statute provides that the suit shall not abate by the death of the nominal plaintiff, and real and mixed actions shall not abate by the death of either party, &c. *Held*, that cases like the present, are not provided for, either directly or by a a fair construction of the statute, the *scire facias* not being a common law remedy to revive a suit, and if it can issue for that purpose it must be by statute; nor does a suit like the present survive by the common law.

A *scire facias* is a common law remedy to revive a judgment, though it is not to revive a suit pending, and the distinction is sometimes overlooked; the statute of 1846 remedies this defect in our law, by authorizing a suit commenced by an original administrator to be revived in case of his death in the name of the administrator *de bonis non;* but this party died some time before this act was passed, and therefore it could not apply to him.

IN error from the circuit court of Lawrence county; Hon. Thomas A. Willis, judge.

Portevant brought suit in the circuit court of Lawrence county against Samuel Prestidge, administrator of Z. E. Pendleton, in *assumpsit*. The declaration contained three counts. 1st. An account for $216 for the hire of certain slaves, hired by the plaintiff to the intestate. 2d. In *indebitatus assumpsit*, charging that Pendleton, together with one Michael Collins, who is not sued in this action, was indebted to the plaintiff in the further sum of $216 for the hire of certain other slaves to Z. E. Pendleton and Michael Collins, at their instance and request. 3d. Account for money had and received by Pendleton to plaintiff's use. On the capias is indorsed — " This is an action of trespass on the case, founded on defendants' intestate's open account, amounting to $216. The record shows no bill of particulars.

Prestidge, the administrator, appeared and pleaded *non assumpsit*. At the April term, 1846, the death of Prestidge, the defendant, was suggested, and a *scire facias* ordered to issue against John Gartman, administrator, and Eliza A. Pendleton, administratrix, *de bonis non*, of Z. E. Pendleton, deceased.

On the 17th of August, 1846, a *scire facias* issued, reciting the institution of the suit, that after its institution, and before final judgment rendered, Prestidge had died, and administration *de bonis non* granted to Gartman, &c. of the estate of Z. E. Pendleton, and commanding the sheriff to make known to them that they appear, &c., " to show cause, if any they can, why the damages in the action aforesaid, should not be adjudged to the said Jacob Portevant against the said John Gartman, administrator, and Eliza A. Pendleton, administratrix, *de bonis non*, as aforesaid, according to the statute," &c. The defendants demurred to the *scire facias*, and assigned as cause : 1st. The *scire facias* does not show the amount of damages sued for. 2d. Does not show when Prestidge died, or when the administrators *de bonis non* were appointed. 3d. Does not show the state of the pleadings at the death of Prestidge. 4th. Does not show that the claim has not been satisfied. The

record then states that the demurrer was argued, and " is by the court here sustained," and the said Jacob Portevant suggests to the court, that the said S. Prestidge, administrator, &c. died on the 19th day of January, 1845, and that Gartman and E. A. Pendleton had been appointed administrators *de bonis non* of the said estate, and they ask the court to order a *scire facias* to revive this suit against them, which application the court overruled, and ordered the suit to abate. And the plaintiff below prosecuted this writ of error.

*W. P. Harris*, for appellant.

It is apparent from the record that the judgment on the demurrer was not based entirely, if at all, on objections to the form of the writ. The judgment abating the suit shows that it was upon an objection which went to the plaintiff's right to revive the suit by any form of proceeding; and I take the liberty to suggest to this court, that there are numerous cases in the court below depending on this question, and by consent of counsel on both sides are suspended to await the result of this cause. To this point, therefore, I respectfully invite the attention of the court.

The objection referred to is, that in suits against executors and administrators, upon the death of the defendant pending such suit, there can be no revival against the administrators *de bonis non* of the first intestate.

The reasoning employed in support of this position, which was successfully assumed below, is, that the right to revive suits in case of the death of either party before judgment is derived from the statute, and confined to those cases enumerated by the statute, and that the case at bar is not embraced in the statute; that there is no privity between the administrator and the administrator *de bonis non;* that the act of 1846 does not, in its terms, embrace a case like the present, the defendant having died before the passage of that act; that the act of 1846 cannot operate upon cases brought before its passage.

In opposition to this it is urged, that though the case at bar is not comprehended in the express language of our statute in

relation to the revival of suits, yet the whole structure and spirit of our law in relation to executors and administrators, show that the right to revive in a case like the present exists. Rev. Code, 43, § 55 ; Ib. 46, § 64.

When the representative or trustee of a fund sues or is sued and dies pending suit, there exists a power in the courts, and such has been the uniform practice here to make the successor a party, although no express language may be found in any statute to authorize it.; as in the case of *Nevitt* v. *Bank of Port Gibson*, 6 S. & M. 513.

It is true there is a want of privity between the original administrator and the administrator *de bonis non*, that is, the latter is the representative by paramount title, as the books say, of the first intestate, and not the representative of the deceased administrator. Nevertheless, the administrator *de bonis non* succeeds to the legal rights and responsibilities of the original administrator, in respect to the unadministered assets as to which he represents the original intestate. 1 Williams' Ex'rs. 570, 597.

The common law and the English statutes on the subject of administrators and executors, differ from our statutes on the same subject, according to the practice under the former ; the representative and not the fund is regarded as the debtor. Story, Com. Equity, 543, § 579. The responsibility of the personal representative sued for a debt of the intestate, depended rather upon the kind of plea which he put into the action than the amount of assets, so that it may be said that the suit attached to him personally to some extent. 1 Story, Com. Equity, 543, § 579.

In equity, however, the fund is regarded as the debtor, and the representative as merely the trustee ; and in courts of equity in England, the administrator *de bonis non*, by bill of revivor, could be brought in to prosecute or defend suits commenced by or against the original administrator. 1 Williams' Executors, 584. Our statute greatly modifies the common law in this respect, and seems to fix upon representatives of deceased persons the character they sustain in equity, that of mere trustees of a trust fund, who are necessary parties in all

Portevant *v*. Pendleton's Administrators.

proceedings to subject that fund to the payment of debts. Their responsibility extends to the safe keeping and proper application of this fund, and is measured by the fund itself; suits against them cannot become personal to them; no mispleading will render them responsible beyond the amount of assets in their hands. When, therefore, there is a suit against this representative of a fund to subject this fund to the payment of a debt, and he dies pending the suit, the person or persons who succeed to the custody of that fund should, upon principles of plain reason, be brought in to defend the suit.

It will not be contended that the suit can progress against the personal representative of the deceased administrator, because he has not the assets, out of which the debt is to be satisfied; still less will it be contended, that the remedy for the recovery of the debt is lost, and it appears to be equally absurd and unjust, to require the plaintiff to dismiss his suit and turn round and commence a new action against the successors of the previous administrators.

The act of 1846, (Acts 1846, p. 187,) for which there seems to have been no necessity, if the positions assumed in this argument are correct, provides a remedy by *scire facias*, when administrators, &c. die pending suit against, and is made to apply to all suits pending at its passage. It will, perhaps, be insisted, that this act cannot have a retrospective operation, or be made to apply to suits commenced before its passage; but as it applies only to the remedy, takes away no defence, and does not alter the position of parties, except to direct that to be done by *scire facias*, which it is contended should be effected by a new action, there is little foundation for the objection. For these reasons, it is insisted, that the court below erred in sustaining the demurrer to the *scire facias*, and also in directing the suit to abate, and its judgment ought to be reversed.

*D. C. Glenn*, on the same side.

1. That the authorities in the first opinion sustained it, especially 3 Randolph; and that the same rule applied when you sought to revive a suit as to revive a judgment against an administrator *de bonis non*.

3*

2. The duties of an administrator *de bonis non*, his capacities and responsibilities, are the same as those of an original administrator. 1 Lomax, Ex. 326; 3 Rand. 287; 5 Ib. 64, 65; 3 Leigh, 395, 404.

He succeeds to the rights, and is charged with the responsibilities of the original administrator, as far as the unadministered assets go. 1 Williams' Ex. 656, 669; *Catherwood* v. *Caband*, 1 Barn. & Cress. 150; 8 Cowen, Rep. 333.

3. That in Mississippi, as in chancery, the law looked to the fund of which the administrator was the trustee, and not to him personally; as to the view in which the common law viewed executors, &c., and the difference in chancery, he cited Mitford, Eq. 64; 1 Story, Eq. Jur. § 579, and cases there cited. As to our statutes and decisions, he cited 2 How. 617; 6 S. & M. 161, 199, 279, as regards the pleadings of executors, &c.

4. That the law cast the unadministered estate upon the administrator *de bonis non* by legal assignment, see 6 S. & M. 556, top page, citing 1 Lomax, 287; 1 Williams, 510. The funds in his hands are assets for the benefit of creditors. He is by law the successor to this fund, invested with its control, and as such, on general principles now well established, he may be reached by suit. See 8 S. & M. 49, 50 – 61. It is now a well settled principle in the jurisprudence of Mississippi, that wherever there is a person upon whom the law has cast a fund subject to the claims of creditors, there exists in the courts of the country, a power through him to enforce the rights or effectuate the remedies of creditors in some form or other, though there may be no express statute therefor. See generally *Bank of Port Gibson* v. *Nevitt*, 6 S. & M. 556; *Commercial Bank* v. *Chambers*, 8 Ib. 50.

5. The express language, as well as the general spirit of our legislation in regard to the representation of estates, authorize a revivor in this case. See How. & Hutch. ch. 36, § 27 – 36, 38, 40, 44, 49, 82, particularly §§ 88 and 95; Hutch. Code, ch. 59, §§ 47, 48, 52, 53.

6. The law of 1846 gives us the power to revive, even did we not possess it generally. This act is clearly retrospective,

covering this case, and in being so violates no "vested right." It has of late become fashionable for debtors to call every thing a violation of "vested rights," which goes to secure further and enforce the claims of their creditors. Upon principle or precedent, the charge is wholly unfounded when applied to the act of 1846, which is purely a remedial statute.

*D. Mayes,* for defendant in error.

The *scire facias* is prosecuted under the act to authorize the revival of suits and judgments at law, &c., approved March 1, 1846, Session Acts, 1846, 187. The first section is as follows: " That whenever any suit shall have been, or may hereafter be instituted, by any administrator *ad colligendum,* or by or against any executor or administrator having plenary powers, and the powers of such administrator *ad colligendum,* executor or administrator having plenary powers, shall cease or be determined, and afterwards letters of administration, or testamentary shall be granted, such suits shall not abate at law, or be dismissed in equity ; but shall continue and may be revived by *scire facias* at law or by bill of revivor in equity." Prestidge, the administrator, died 19th of January, 1845, more than one year before the passage of the act. The question is, Does this act authorize a revivor by *scire facias* against the administrator *de bonis non ?* It does not.

1. Its language is clearly made both retrospective and prospective, as to the time when the suit "shall have been, or may hereafter be instituted," &c., and the language is changed and the future only embraced, when the legislature speak of the powers ceasing. They do not, as in the first case, say, when the powers, &c. "shall have ceased or may hereafter cease," but the expression is, "shall cease or be determined," clearly showing that the legislative mind was brought to discriminate between language which would, and that which would not be retrospective ; and that the statute does not extend to this case and authorize a *scire facias,* seems so clear as almost to require an apology for doing more than merely state the point. It is well settled that no statute shall by construction have a retrospective operation ; no instance can be found where prospective

words have in modern times received by construction a retro-active effect.   On the contrary, where words are used which are of such broad import, that they clearly embrace the past as well as the future, they have by judicial construction been restrained and confined to the future, unless by so doing the statute would be wholly defeated.   If, however, the words be clear and express, and do not, by possibility, admit of a mere prospective operation, as " whenever any suit shall have been or may hereafter be instituted," the legislative intent being appa-rent beyond the possibility of doubt, the court must give the statute a retrospective operation, unless in doing so the consti-tution would be violated.   This subject is ably examined in *Dash* v. *Van Kleeck*, 7 Johns. Rep. 477, by Judge Spencer and Ch. J. Kent, especially the latter.   See also *Johnson* v. *Burrell*, 2 Hill's N. Y. Rep. 238 ; 3 Marshall's Ky. Rep. 128 ; *Fisher* v. *Cockerill* and *Fisher* v. *Higgins*, 5 Monroe, 129, 140 ; 6 Bacon, Abr. 370 ; 1 Black. Comm. 44 ; Co. Litt. 360 *a; Couch* v. *Jeff-ries*, 4 Burr. 2460 ; 2 Shower, 117 ; 2 Mod. 310 ; 2 Lord Ray. 1352 ; *Elliot* v. *Lyel*, 2 Call's Rep. 268, 286 ; *Osborne* v. *Huger*, 1 Bay's Rep. 179 ; *Ogden* v. *Blackledge*, 2 Cranch, 272 ; *Fum-ster* v. *Ringo*, 5 Monroe, 336 ; *Duckham* v. *Smith*, 5 Ib. 375 ; *Hardin* v. *Barbour et al.*, 6 Ib. 397 ; *Owens* v. *Holliday*, 7 Ib. 297 ; *Davis et al.* v. *Phelps*, Ib. 636 ; *Gatewood's Ex.* v. *Gate-wood*, 3 J. J. Marsh. 119 ; *Letcher et al.* v. *Kennedy*, Ib. 705.

2. It is further thought, that the words " Such suit shall not abate at law, or be dismissed in equity, but shall continue, and may be revived by *scire facias*," &c., clearly show that the act only embraces cases, where the suit had been before instituted and was then pending, or should thereafter be insti-tuted, and was not intended to embrace cases where the death of the administrator had occurred before the passage of the act.

By the ancient common law, all personal actions abated by the death of the party.   By statutes it had been declared that actions for specified causes should not so abate, but might be revived against the representatives of the deceased.   But there was no previous statute, providing that if an executor or ad-ministrator died, an action pending against him in his fiduciary

character should not abate, but might be revived against the administrator *de bonis non*. That case stood then as at common law. This being the case, the action had abated by the death of the administrator upwards of thirteen months before the passage of the act. It was the death of the party that abated the suit, although that abatement may not have been entered on the record. The defendant could not plead it or cause it to be entered, either in person or by attorney, for he was dead, and a dead man has no attorney. When the legislature say such action shall not abate, they cannot have meant that all actions heretofore abated may be revived. Yet this is necessary to be held, or the judge below did not err.

This cause was decided by this court at a former term in favor of plaintiff in error, reversing the judgment of the court below, but a petition for re-argument was filed by defendant in error, which was granted, and the opinion now given in the case was delivered by the court.

Petition for re-argument by defendant.

I respectfully ask a re-argument of this case. It was an action of *assumpsit*, instituted by the plaintiff in error against Prestidge, as administrator of Z. E. Pendleton. Prestidge died in January, 1845. There was neither judgment by default, or verdict in the case. It stood on a plea of the general issue. At the April term, 1846, the death was suggested. On the 17th of August, 1846, a *scire facias* issued to revive this action against the defendants in error, as administrator and administratrix *de bonis non* of the intestate of the deceased defendant.

An act of assembly approved 1st of March, 1846, authorized a *scire facias* against administrators *de bonis non*, to revive actions brought against the original administrator.

The question discussed in my written brief was, Whether that act should or should not have a retrospective effect. That question is not decided, but the case has been disposed of on a ground not anticipated or discussed by the attorneys on either side.

The question here presented for consideration is not whether a *scire facias* could, or could not, be maintained at common

law, or by statute law against or by an administrator *de bonis non*, upon a judgment in favor of or against the administrator or executor; for here there was no judgment, and consequently no question whether a *scire facias* could, or could not have been maintained on a judgment.   I did not overlook, but well knowing, passed by that subject; because I did not perceive that if it did, or did not lie, by or against an administrator *de bonis non*, where the case had been proceeded in to final judgment, it followed that it might also be maintained where there was no judgment interlocutory or final, and no verdict; and I respectfully ask the court to consider whether such a conclusion does follow from the premises.

The points before the court are only these.   If an action of *assumpsit* be brought against an administrator as such, and he, having appeared and plead *non assumpsit*, die before verdict, or judgment by default, can such action against the administrator be revived and continued against the administrator *de bonis non* of the testator or intestate? and if not before the act of 1846, then, second, has the act of 1846 a retroactive effect?

The court say " The act of 1846 seems to have taken it for granted that suits of this character would abate by the common law, and that its provisions were necessary.   To some extent at least the statute was but a're-enactment of the common law, and wholly unnecessary, except to remove doubts, which seem to exist in the minds of some persons."   It is here understood that the meaning is, that it was but a re-enactment of the common law, in so far as it gave a *scire facias* against the administrators *de bonis non*, to revive an action brought against the administrator as such, who died after appearance and plea of the general issue, but before verdict, or judgment interlocutory or final ; that, under these circumstances, the action did not abate by the common law, and that, to that extent at least, the statute was only necessary to remove doubts, which seem to exist in the minds of some persons.

The authorities referred to by the court relate only to cases of *scire facias* to have execution on a judgment rendered before the death.   But this is not that case.   In the written brief which I submitted, I stated, that at common law the

action would have abated by the death of Prestidge. I referred to no authorities, because I believed there had never been a doubt on the subject. Finding that the court entertain a different opinion, 1 respectfully ask attention to a few of the many to be found in our books.

Lomax on Executors, vol. i., 324, pl. (10,) says, "As to the continuance of suits commenced by the deceased, it will be convenient to investigate the subject; first, where the testator or intestate died before judgment; second, in cases where he has died after final judgment. 1st. At common law the death of a sole plaintiff or defendant, at any time before final judgment, abated the suit."

Henry St. G. Tucker, in his notes on 2 Black. Com. 253, reads, "In actions arising *ex contractu* by breach of promise or the like, where the right descends to the representatives of the plaintiff, and those of the defendant have assets to answer the demand, though the suits abated at common law by the death of the parties, yet they might be revived against, or by the executors, being indeed rather actions against the property than the person, in which the executors have now the same interest that their testator had before." That by the word "revived," he only means that a new suit might have been instituted on the original cause of action, and not that the suit pending at the death might be revived and continued by *scire facias*, is evident; for he continues, "But in Virginia, neither suits at law or in equity now abate by death, even before verdict, if the suit can be maintained by or against the defendants, or if he be dead, by or against his administrators; but a *scire facias* issues against his executors or administrators, to show cause why the suit should not be proceeded in to final judgment." 1 Rev. Code, ch. 128, § 37, 38.

Chitty, in his notes to 2 Bl. 308 (top), 399 (margin), note (10), says, "At common law the death of a sole plaintiff or sole defendant, at any time before final judgment abated the suit; but now by 17th Car. 2, ch. 8, where either party dies between verdict and judgment, it may still be entered up within two months after verdict."

Williams, in his notes to 2 Saund. R. 72, *k*, proceeds, "And

lastly, as to death; which may be considered either as it happens before or after final judgment.  At common law, the death of the plaintiff or defendant at any time before final judgment, would have abated the suit."  And, again, 72, *g*, he says, " At the common law, in all actions where there are two or more plaintiffs or demandants, the death of one or more of them pending the suit, that is, before final judgment, is an abatement of the action, though the property survive to the other, except in a few cases, as a *quare impedit* by two."  " So where there are two or more tenants or defendants, the death of one of them pending the action abates the suit."  I refer to this not as in point, but to show the extent of the common law doctrine of abatement by death.

In 2 Tidd's Practice, 932, we read, " At common law, the death of a sole plaintiff or defendant, before final judgment, abated the suit."

The same will be found, word for word, in 14 Petersdorff's Abr. 269 (top), and also in the opinion of Judge Story, in *Hatch* v. *Eustis*, 1 Gallis. C. C. R. 160.  That a *scire facias* did not lie in England, either by common or statute law, in a case like the present, is manifest even by the definition of the term, as we have it in the writers, ancient and modern.  In 2 Crompton's Practice, 70, a *scire facias* is thus defined : " A *scire facias* is a writ judicial, founded on some matter of record; as judgments, recognisances, and letters patent, on which it lies to enforce the execution of them, or to vacate or set them aside."

This definition is entirely faultless when applied to the *scire facias* as it existed in England.  As every definition should do, it includes every thing which a *scire facias* embraced, and excludes every thing which it does not embrace.  When analyzed we find it consists of a statement of, 1st, the nature of the writ; it is a " writ judicial;" 2d, on what it is founded, " some matter of record, as judgments, recognisances, and letters patent;" 3d, an l lastly, its office; 1, " to enforce the execution of them;" 2, or "to vacate or set them aside;" and I hazard little in saying that a *scire facias* was not maintainable in England for any other purpose.  In proceedings between

parties litigant, it was given in the following cases : 1st, at common law, extended by the statute Westminster 2d, where the case had proceeded to final judgment before the death ; 2d. It was given by statute 17 Charles 2, ch. 8, where the death occurred before final judgment, but after verdict ; 3d. It was extended by 8 & 9 William 3, ch. 11, § 6, where the death happened after interlocutory, but before final judgment. The *scire facias* given by 17 Charles 2, was not to revive an abated case, but to prevent the abatement and authorize judgment, as if party had not died. But it gave a *scire facias* on the judgment thus entered. And nothing is hazarded by saying, that but in the foregoing instances, the *scire facias* for all the purposes of this argument, was as far unknown to the laws of England, and yet is as much unknown to them, as was and is the present Louisiana law of seizure and sale, or the actions which they call petitory.

Tomlin, title *Scire Facias,* 2 Saund. R. 71, n. 4, and many others, give a similar, though some not as full a definition.

The truth of my position is further evident from the fact, that no writer speaks of or alludes to a *scire facias* where the death occurred before interlocutory judgment or verdict ; and the classification of those who treat of the subject most fully and methodically, furnishes no head under which the *scire facias* in this case could be arranged. Thus, in 2 Crompton, 70, we find " A *scire facias* lies for many purposes in law, the writ being framed according to the subject-matter. But the writs of *scire facias* which will be proper to be noticed in this work, are only of four kinds. 1. Of the *scire facias* against bail, after judgment had against the principal, on their recognisance forfeited. 2. Of the *scire facias* to revive a judgment, by and against the same identical parties to the suit on which the judgment was had. 3. Of the *scire facias,* to continue a suit by or against the representatives of one of the parties dying before final judgment. 4. Of the *scire facias,* by or against the representatives of a party to a suit after judgment, and before execution."

In the third division, the present case must be included if in any, but we see that it only comprehends the case of " the

representatives of one of the parties dying," and the administrator *de bonis non* is not a representative of the first administrator.   When we consider the great learning, precise language, and strict method of the author, we can but conclude that the words above quoted were cautiously, and with good reason, inserted to limit the extent of the immediately preceding words.   This is placed beyond doubt by the facts, that they are the words of 8 & 9 William 3, ch. 11, § 1, which gave the *scire facias* therein spoken of, and that the writers agree that " the statute is expressly confined to cases where the action might have been originally prosecuted or maintained by or against the executors or administrators of the party dying." I will but refer to 14 Petersdorff, 269, (top.)

But we find that when he comes to give a full treatise under that head, commencing at p. 101, it extends to two cases only. 1. A *scire facias* when the death occurred between verdict and judgment, which was given by 17 Car. 2, ch. 8.   2. Where death occurred " after interlocutory judgment, and before final judgment had."   This was given by 8 & 9 William 3, ch. 11, § 6.   See also 3 Tomlin, 426 ; 14 Petersdorff, before referred to, (*b*) (*c*) ; 5 Bac. Abr. 130 *c* ; 2 Saund. R. 72 *k*.

Had a *scire facias* been sustainable at common law to revive an action where the death occurred, as in this case, after issue joined and before verdict, in a case in which there never had been an interlocutory judgment, why were the acts of Car. 2, and William 3, passed ?   And, furthermore, who can doubt but that some one at least, of the numerous sages of the common law, whose rich treasuries of learning are now accessible to us, would have informed us that a *scire facias* could be maintained in England to revive, where the death was at any time after plea pleaded.   But I have in vain sought for such an idea in every author to which I have access, including Coke on Littleton, Hale's History of the Common Law, Reeves' History of the English Law, Crabb's History of the Common Law, Crompton's Practice, Impey's Practice, Tidd's Practice, Gilbert's Law and Equity, Bacon's Abridgment, Viner's Abridgment, Blackstone's Commentaries, with the notes of every editor, be he Englishman or American, Wooddeson's Lectures,

and others; and I find not one word or syllable favoring the idea that a *scire facias* was maintainable to revive in a case like the present. But on the contrary, it may safely be remarked of each of them, that if such was the common law, or statute law, he was wholly unadvised of it.

I have likewise examined the precedents of writs of *scire facias* as far as I have been able to find them, and I find none English or American for a *scire facias* in a case like the present.

I have also myself, as have other members of the bar, looked into digests of every grade and order, and we have as yet found nothing indicating that such a *scire facias* has ever in England or America been brought, much less sustained.

But I do find that which shows that a *scire facias* cannot be sustained in cases more nearly approaching the true doctrine than the present. It has been held not to lie where the party dies before interlocutory judgment, though it be after the expiration of the rule to plead. 3 Tomlin, 437. The case referred to is *Wallop* v. *Irwin*, 1 Wils. R. 315. That case was decided by B. R. with Lord Hardwicke at its head, and has never been questioned, but is quoted by learned lawyers and judges to the present day.

The opinion of Judge Story in *Hatch* v. *Eustis*, 1 Gallis. C. C. R. 160, if studied, is directly, or by unavoidable inference, with me upon every point, both as to the common and statute law of England.

The case of *Benjamin's Executors* v. *Smith*, 17 Wend. 208, confirms all I have contended for.

Before the passage of the act of 1846 the subject had been conversed about and considered by lawyers who confer honor on the Mississippi bar, and they with one accord were of opinion, as I am informed, that the act was indispensable to supply a defect in the common law, and a *casus omissus* in the statute law. It was referred to the judiciary committee, who were at least of some consideration, and the bill was reported to give a remedy by *scire facias*, where, in their opinion, none before existed. And in the state of the law as we find it by reference to the authorities I have referred to, I consider the legislative

opinion of some weight. I do not ask this re-hearing lightly, or without motives, which I think would be highly approved by, if known, to the court. Confident that further consideration would lead to a different result than that at which the court has arrived, I respectfully but earnestly ask a re-argument.

DANIEL MAYES.

We, the undersigned, do hereby certify that we have examined the record, briefs of counsel, opinion of the court, and the authorities referred to by the court and the counsel, except those referred to in the brief on the subject of retrospective laws. We are of opinion, upon full reflection, that a re-argument ought to be granted, and join in the petition to that effect.                                    A. C. BAINE,

E. W. F. SLOAN,

W. R. MILES.

*Jackson, Jan.* 23, 1848.

*Per curiam.* The plaintiff in error instituted this suit against the original administrator of Pendleton. Process was served, and Prestidge the administrator appeared, but he died before trial. Administration *de bonis non* was granted to defendants in error, and the question is, Can a suit commenced, and pending undetermined, against the original administrator, be revived by *scire facias* against the administrator *de bonis non?*

By the common law all personal actions abated by the death of either party before judgment. 2 Tidd, 1024; 2 Sellon's Practice, 191. The difficulties and delay produced by the operation of this rule, were remedied by the statutes of 17 Charles 2, and 8 & 9 William 3; which gave the *scire facias* to bring in the representatives of the plaintiff or defendant. But these statutes go no further than to authorize the bringing in the immediate representatives of the party to the suit.

The evils of the common law rule are also remedied by our statutes. In the first place, it is declared that actions commenced by or against a testator or intestate, shall survive for

or against the executor or administrator, with the same effect that they might have been prosecuted by or against the testator or intestate. Hutchinson's Code, 672. By another statute, it is also declared that pending actions shall survive, and the *scire facias* is given to bring in the representatives. Hutch. Code, 841, 842. And the same statute also provides that the suit shall not abate by the death of the nominal plaintiff, that real and mixed actions shall not abate by the death of either party, but that a *scire facias* may issue to bring in the heir or devisee; and also that an action shall not abate by the death of one plaintiff or defendant, when there are two or more. But a case like the present is not provided for, either directly or by a fair construction of the statutes. The *scire facias* is not a common law remedy to revive a suit, and if it can issue for that purpose, it must be by statute. Nor does a suit like the present survive by the common law. A *scire facias* is a common law remedy to revive a judgment, though it is not so to revive a suit pending, and this distinction is sometimes overlooked. On this principle, if an administrator or executor recover a judgment and die, the administrator *de bonis non* may have a *scire facias* to have execution of the judgment. 2 Sellon's Practice, 192.

The statute of 1846 remedies the defect in our law, by authorizing a suit commenced by or against an administrator, to be revived in case of his death in the name of the administrator *de bonis non.* But Prestidge had died some time before the act passed. The action abated by his death, and the legislature could not revive a right of action which had been lost.

Judgment affirmed.

---

NOTE, by the Reporter. — The arguments of counsel are published at length in this case at the request of the court, because the principle decided is an important one, and there are many other cases pending in court upon the same principle.